IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HARIBAHADUR BISTA,

    Petitioner,

v.                                                   No. 2:26-cv-00232-MLG-KK

RYAN ELLISON, US Attorney Office; DORA CASTRO, Acting Warden, Otero County Processing Center; Field Director for U.S. Immigration and Customs Enforcement, El Paso Field Office, United States Immigration and Customs Enforcement; TODD M. LYONS, Acting Director, United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; PAMELA BONDI, U.S. Attorney General, in their official capacities,

    Respondents.

**ORDER PARTIALLY GRANTING VERIFIED PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING RESPONDENTS TO CONDUCT A BOND HEARING PURSUANT TO 8 U.S.C. § 1226(a)**

Petitioner Haribahadur Bista, a citizen of Nepal, petitions the Court for a writ of habeas corpus, Doc. 2 ("Petition"), ordering federal immigration authorities to release him from custody, or, in the alternative, to conduct a bond hearing pursuant to 8 U.S.C. § 1226(a). Doc. 2 at 16. He also requests an order awarding attorney's fees and costs, prohibiting his transfer outside the District of New Mexico, and enjoining Respondents from "conducting a final merits hearing on his asylum application until either his release or until a bond hearing is scheduled." *Id.* On February 17, 2026, federal Respondents filed a response. *See* Doc. 7.

Whether Bista is eligible for a bond hearing pursuant to 8 U.S.C. § 1226(a), or whether he is instead subject to the mandatory detention provision provided by 8 U.S.C. § 1225(b)(2)(A), is a

1

question the Court has already addressed in regard to similarly situated petitioners.[1] *See, e.g., Cortez-Gonzales v. Noem*, No. 2:25-cv-00985, 2025 WL 3485771, at *3-5 (D.N.M. Dec. 4, 2025); *Diaz-Cruz v. Dedos*, No. 1:25-cv-01117, 2025 WL 3628517, at *2 (D.N.M. Dec. 12, 2025); *Gonzales Ramos v. Dedos*, No. 1:25-cv-00975, 2025 WL 3653928, at *2-5 (D.N.M. Dec. 17, 2025). In doing so, the Court joins the "overwhelming, lopsided majority" of courts that have concluded that § 1226(a)—not § 1225(b)(2)(A)—governs the detention of noncitizens[2] like Bista, who entered the United States in November 2024 and, after being temporarily detained, was released into the United States on his own recognizance. Doc. 2 ¶¶ 26-27; *see, e.g., Barco Mercado v. Francis*, No. 25-CV-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (observing that the "overwhelming, lopsided majority" of courts have rejected the interpretation that § 1225 requires mandatory detention of all undocumented noncitizens living in the United States "until their removal proceedings are completed").

Federal Respondents agree the Court's previous rulings control the outcome of this case because "the facts are not materially distinguishable for purposes of this Court's decision on the legal issue of which statutory provision authorizes Petitioner's detention." *See* Doc. 7 at 4. They assert that Bista—like other similarly situated persons—is "subject to mandatory detention under § 1225(b)(2) because he was present in the United States without being admitted or paroled." Doc.

---

[1] *Compare* § 1226(a)(2) ("On a warrant issued by the Attorney General, a[] [noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States . . . and pending such decision, the Attorney General . . . *may* release the [noncitizen] on . . . bond of at least $1,500 . . . ." (emphasis added)), *with* § 1225(b)(2)(A) ("[I]n the case of a[] [noncitizen] who is an applicant for admission, if the examining immigration officer determines that a[] [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] *shall* be detained for a proceeding under section 1229a . . . ." (emphasis added)).

[2] "This [order] uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020); *see generally* 8 U.S.C. § 1101(a)(3) ("The term 'alien' means any person not a citizen or national of the United States.").

7 at 3. In advancing this argument, federal Respondents once again cite the Board of Immigration Appeals' ("BIA") opinion in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). Doc. 7 at 3. The BIA's opinion is not binding on the Court, and the Court rejects the BIA's interpretation of the statutes for the same reasons articulated in its other decisions. *See, e.g.*, *Cortez-Gonzales*, 2025 WL 3485771, at *5 ("This Court is not bound by the BIA's interpretation of the relevant statutes—particularly when the [interpretation] lacks sound legal foundation."); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("The views of the Executive Branch [may] inform the judgment of the Judiciary, but [do] not supersede it.").

The Court therefore concludes § 1226(a) governs Bista's detention. Respondents' reliance on § 1225(b)(2)(A) to detain Bista without a bond hearing[3] constitutes an ongoing violation of his right to due process under the Fifth Amendment to the United States Constitution. *See Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 785 (E.D. Mich. 2025) ("The discretionary bond framework under Section 1226(a) requires a bond hearing to make an individualized custody determination . . . . Therefore, without first evaluating [a noncitizen's] risk of flight or dangerousness, his detention is a violation of his due process rights."); *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."); *see also Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce [a] [noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all

---

[3] An immigration judge denied Bista's request for a custody redetermination hearing on December 15, 2025, "because Matter of Hurtado." Doc. 2 at 55.

'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.").

Accordingly, the Court will grant Bista's request for a bond hearing. Federal Respondents are ordered to provide Bista with an individualized bond hearing pursuant to § 1226(a) before a neutral immigration judge within seven days[4] of this Order's filing. At the bond hearing, federal Respondents must justify Bista's continued detention by clear and convincing evidence.[5] If federal Respondents fail to meet this evidentiary burden, Bista should be released on appropriate conditions. Federal Respondents are further ordered to file a status report within ten days of this Order's filing to certify their compliance. The status report must include when the bond hearing occurred, if bond was granted or denied, and, if bond was denied, the reason(s) for the denial. If Bista does not receive a bond hearing in accordance with this Order, the Court may order his immediate release.

It is so ordered.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA

---

[4] The deadlines in this order are to be calculated pursuant to Federal Rule of Civil Procedure 6.

[5] Several years ago, the United States Supreme Court declined to decide whether the Due Process Clause of the Fifth Amendment to the United States Constitution requires that noncitizens being detained pursuant to § 1225 and § 1226 receive periodic bond hearings "at which the Government proves by clear and convincing evidence that . . . detention remains justified." *Jennings v. Rodriguez*, 583 U.S. 281, 291, 312-14 (2018). "Since *Jennings*, a number of district courts have taken up the question left open by the Supreme Court, and there has emerged a consensus view that where, as here, the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." *Darko v. Sessions*, 342 F. Supp. 3d 429, 435 (S.D.N.Y. 2018). The Court agrees that "given the important constitutional interests at stake, and the risk of harm in the event of error, it is appropriate to require the government to bear the burden . . . ." *Id.* Thus, "in accordance with the overwhelming majority of courts to have decided the issue," the Court "concludes that the government must bear the burden by clear and convincing evidence." *Id.* at 436.